UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| MICAH TERRALL DEANTHONY LMINGGIO, <br><br> Plaintiff, <br><br> v. <br><br> BRIAN ENGLISH *et al.*, <br><br> Defendants. | CAUSE NO. 3:24-CV-574 DRL-SJF |

OPINION AND ORDER

Micah Terrall Deanthony Lminggio, a prisoner without a lawyer, filed an amended complaint. ECF 6. "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mr. Lminggio alleges he was taken to a segregation unit at the Miami Correctional Facility on August 15, 2023, where he was "locked in a shower cage from 6:15 PM until 2:45 AM without being informed of the reason why." ECF 6 at 2. He told C/O Issac S. Witaker and Sgt. McKibbin he "needed to use the restroom" for three hours, but they denied his requests. *Id*. After three hours, Sgt. McKibbin gave him a used Styrofoam tray and told him if he needed to defecate, he would have to use the tray. Mr. Lminggio claims he was left with "no choice" but to do so. *Id*. Afterwards, Sgt. McKibbin walked away laughing. Mr. Lminggio then took the tray and placed it in front of a camera "in order to use it as a silent witness." *Id*. Mr. Lminggio claims this incident left him "battling feelings of slavery." *Id*. On August 20, 2023, Mr. Lminggio began filing grievances about what had occurred, but he never received a response from the grievance specialist or the Warden. Mr. Lminggio has sued Warden Brian English, Sgt. D. McKibbin, and Grievance Specialist Michael Gapski seeking to have the defendants "refrain from treating people like this." *Id*. at 4.[1]

As an initial matter, Mr. Lminggio doesn't describe any action by Warden English that would subject him to liability. He claims only that he wrote to the Warden after the event occurred to let him know his grievances were not being answered, but he didn't respond. This doesn't state a claim. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the

---

[1] His complaint form states he is suing 6 defendants, but only 3 are named in the caption. ECF 6 at 1. The only other individuals he mentions in the body of his complaint are C/O Witaker (who denied his bathroom requests along with Sgt. McKibbon) and Sgt. K. Williams (who he handed one of his grievances to afterwards). The court will discuss these individuals in the context of the relevant claims.

2

organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 594, 596.

On a related note, Mr. Lminggio has sued Mr. Gapski, the grievance specialist, for allegedly ignoring his grievances after the event occurred; he also mentions that he turned in a grievance to Sgt. K. Williams, but he never received an answer. These allegations don't state a claim because Mr. Lminggio doesn't have a constitutional right to access the grievance process. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (no Fourteenth Amendment substantive due process right to an inmate grievance procedure); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)).

As to Mr. Lminggio's assertion that he was moved to a segregation unit with no explanation, the Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on him in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[I]inmates have no liberty interest in avoiding transfer to discretionary segregation—that is,

3

segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can "*never* implicate a liberty interest," *see Williams v. Brown*, 849 Fed. Appx. 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher, *see, e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted; emphasis in original); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545

U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Here, Mr. Lminggio alleges he was placed in the segregation unit in a shower cage for a total of eight-and-a-half hours. He complains about the lack of a toilet but doesn't otherwise describe any objectionable conditions. These allegations don't state a viable due process claim. *See e.g., Isby*, 856 F.3d at 524 (7th Cir. 2017) (both duration and conditions must be considered); *Williams*, 849 Fed. Appx. at 157 ("He not only had served just 30 days in segregation, a duration so brief that it foreclosed any implicated liberty interest, but he also raised no complaints about the conditions of his segregation.").

As to any claims regarding the conditions of the holding cell, the Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). In general, while "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]" do not. *White v. Knight*, 710 Fed. Appx. 260, 261–62 (7th Cir. 2018).

The fact that Mr. Lminggio had to defecate on a tray after approximately three hours of being in the segregation cell is unfortunate and unkind. The court doesn't "mean to minimize the discomfort, pain, or embarrassment that even slight limits on toilet access

5

can cause." *Id.* at 262. But a one-time, short-term deprivation isn't the type that rises to the level of a constitutional violation. He admits he was moved out of the holding cell/shower cage within eight-and-a-half hours—he was placed there from the evening until the early morning hours—and he doesn't allege his new cell lacked a toilet or that he was otherwise prevented from using bathroom facilities. Mr. Lminggio's allegations aren't sufficient to suggest either Sgt. McKibbon or C/O Witaker violated the Eighth Amendment. *See id.*, 710 Fed. Appx. at 261–62 (affirming dismissal of complaint where prison policy limited access to toilets during lockdowns, which caused plaintiff to defecate once on his cell floor and another time in a bag after a guard refused to let him use a toilet and told him to "[defecate] on himself").

This complaint does not state a claim for which relief can be granted. Although it appears unlikely based on the facts presented, if Mr. Lminggio believes he can state a claim based on (<u>and consistent with</u>) the events described in this complaint, he may file a second amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form, which is available from his law library. He needs to write the words "Second Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Micah Terrall Deanthony Lminggio until **June 27, 2025**, to file a second amended complaint; and

(2) CAUTIONS Micah Terrall Deanthony Lminggio if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED.

May 29, 2025                                           *s/ Damon R. Leichty*
                                                        Judge, United States District Court