UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MICAH TERRALL DEANTHONY
LMINGGIO,

      Plaintiff,

      v.                             CAUSE NO. 3:24cv574 DRL-SJF

BRIAN ENGLISH *et al.*,

      Defendants.

OPINION AND ORDER

Micah Terrall Deanthony Lminggio, a prisoner without a lawyer, filed a second amended complaint (ECF 15) after the court determined his amended complaint failed to state any claims. *See* ECF 12. "Under 28 U.S.C. § 1915A, the court must screen the complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When a plaintiff is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a plaintiff can plead

himself out of court if he pleads facts that preclude relief. *See Edwards v. Snyder*, 478 F.3d 827, 830 (7th Cir. 2007); *McCready v. Ebay, Inc.*, 453 F.3d 882, 888 (7th Cir. 2006).

Mr. Lminggio alleges he was taken to "a shower with a cage around it" within the Miami Correctional Facility at approximately 6:15 pm on August 15, 2023. ECF 15 at 1. He remained there for approximately eight-and-half-hours.[1] He claims the shower was "covered with urine & feces." *Id*. The smell caused him to vomit. There was no chair, so he had to stand or squat. He asked to use the bathroom for three hours, but Sgt. McKibbin refused. Instead, Sgt. McKibbin handed him a Styrofoam tray from the ground, and Mr. Lminggio eventually defecated onto it. While defecating, he slipped on feces, which "caus[ed] something to pop in Plaintiff's back and right foot." *Id*. at 2. He doesn't allege anyone saw him slip, nor does he allege he requested medical attention when it happened. At approximately 2:45 am, he was placed back in a regular cell. He says, "all my property was taken by staff, nothing to eat with, nothing to drink with, the cell bright light stay on all night until the following evening. Not to mention the cell Plaintiff was placed in was frozen cold." *Id*. Mr. Lminggio claims he "wasn't afforded a hearing to present evidence and plead my case as to why I should have my allowable clear violation of Plaintiff due process rights." *Id*. He filed "three grievances all to no avail." *Id*. He has sued Warden Brian English, Sgt. D. McKibbin, Michael Gapski, K. Williams, Issac, and

---

[1] In his second amended complaint, he says he remained there for "over eight hours." ECF 15 at 1. This is consistent with his amended complaint, in which he specifically stated he was "locked in a shower cage from 6:15pm until 2:45am." ECF 6 at 2.

Witaker for compensatory damages, and he seeks an injunction "ordering defendants to refrain from unconstitutional practice denying prisoners human rights." *Id*. at 3.[2]

As an initial matter, Mr. Lminggio doesn't describe any actions by Warden English that would subject him to liability. He isn't mentioned anywhere in the body of the complaint, and the fact that he generally oversees the prison doesn't state a claim. "'[N]o prisoner is entitled to insist that one employee do another's job,' and the division of labor is critical to the efficient functioning of the organization." *Aguilar v. Gaston-Camara*, 861 F.3d 626, 633 (7th Cir. 2017) (quoting *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)). There is no general *respondeat superior* liability under 42 U.S.C. § 1983, and "public employees are responsible for their own misdeeds but not for anyone else's." *Burks*, 555 F.3d at 594, 596. The same is true of K. Williams, Issac, and Witaker—they aren't mentioned in the body of the complaint, and it's not clear what role they played, if any, in the events that transpired. *See Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.") (citation omitted)). These defendants will be dismissed.

Likewise, although Mr. Lminggio names Michael Gapski as a defendant, he's not mentioned in the body of the complaint either. Construing Mr. Lminggio's second amended complaint generously, it may be inferred that Mr. Gapski failed to respond to

---

[2] He lists these six defendants on the last page of his second amended complaint. ECF 15 at 3. Warden Brian English is listed in the caption of his complaint, but nowhere in the body of the complaint. Sgt. McKibbin is the only defendant mentioned in the body of the complaint.

Mr. Lminggio's three grievances. But this doesn't state a constitutional claim. *See Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting there is not a Fourteenth Amendment substantive due process right to an inmate grievance procedure); *see also Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (observing that "42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or . . . departmental regulations"); *Conner v. Hoem*, 768 Fed. Appx. 560, 564 (7th Cir. 2019) ("In any case, the Constitution does not require state actors to enforce their own policies and regulations.") (citing *Garcia v. Kankakee Cty. Hous. Auth.*, 279 F.3d 532, 535 (7th Cir. 2002)).

As to Mr. Lminggio's vague assertion that he "wasn't afforded a hearing" before being placed in the holding cell, the court presumes he is attempting to bring a due process claim. The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Both the duration and the severity of the conditions must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id.*

4

Similarly, though inmates don't generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes," *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005)— the same analysis applies with regard to duration and the harshness of the conditions, *see, e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration and the conditions of the segregation must be considered in determining whether due process is implicated.") (cleaned up); *Marion*, 559 F.3d at 697-98 & n.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh."); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists). Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted.'" *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913-14 (10th Cir. 2012)).[3]

---

[3] Of note, "for any term of solitary confinement lasting more than days but less than years, qualified immunity will often apply to claims for damages. For segregation terms measured in

Here, it's unclear whether Mr. Lminggio was placed in the shower cage following a disciplinary infraction or whether he was placed there for some other reason. Either way, he admits he remained there for a total of only eight-and-a-half hours. He complains about the lack of a toilet or seat and asserts that the shower was covered in urine and feces.[4] While the conditions described were not sanitary, Mr. Lminggio acknowledges they were fleeting—he was placed there in the early evening and then moved to a different cell by 2:45 am, essentially in the middle of the night. Even if the conditions were as he described, the length of time he spent in them can't be classified as substantial. Accordingly, these allegations don't state a viable due process claim. *See e.g., Jackson*, 150 F.4th at 860–61 (stressing the "combined import" of both duration and conditions and finding that "segregation for a matter of months in repulsive and unsanitary conditions can deprive a prisoner of protected liberty"); *Isby*, 856 F.3d at 524 (7th Cir. 2017) (both duration and conditions must be considered); *Williams*, 849 Fed. Appx. at 157 (describing 30 days as "a duration so brief that it foreclosed any implicated liberty interest").

When an inmate's placement does not trigger any due process concerns, he may still have a claim regarding the conditions of his confinement under the Eighth Amendment, which prohibits conditions of confinement that deny inmates "the minimal

---

months, even if an inmate's segregation amounted to a deprivation of a liberty interest, it is unlikely that prison officials could be held responsible for incorrectly guessing otherwise due to the ambiguity of the parameters of the law." *Jackson*, 150 F.4th at 858–59 (citation and quotations omitted).

[4] He doesn't provide additional details about the cell. He simply describes it as "a shower with a cage around it" (ECF 15 at 1), which suggests it was at least partially open-aired and not fully enclosed.

civilized measure of life's necessities." *Townsend*, 522 F.3d at 773 (citations omitted); *see also id.* at 772-73 ("The issue of cell conditions in TLU is best analyzed as a claim brought under the Eighth Amendment.").

Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). An officer can violate the Constitution if he or she exhibits deliberate indifference to hazardous conditions that may seriously harm an inmate. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021). Deliberate indifference encompasses both objective and subjective components:

> A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning that they denied the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety. Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate.

*Id.* at 719–20 (quotations, citations, and brackets omitted). Put another way, an inmate can state a viable claim for deliberate indifference if he alleges the defendant "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (citation omitted).

"Generally speaking, challenges to conditions of confinement cannot be aggregated and considered in combination unless 'they have a mutually enforcing effect that produces the deprivation of a single, identifiable need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue

7

blankets.'" *Johnson v. Prentice,* 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). Allegations of vague "overall conditions" aren't sufficient. *Id.* Regarding state of mind, "[d]eliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615.

Here, Mr. Lminggio alleges he was placed in a holding cell for eight-and-a-half hours that was covered in urine and feces and didn't contain a toilet or anywhere to sit. After three hours of asking to use the bathroom, he was handed a tray by Sgt. McKibbin and told to defecate on it. It's undisputed that prisoners can't be held in "shockingly unsanitary cells." *Taylor v. Riojas*, 592 U.S. 7, 7–8 (2020) (prisoner held in deplorable conditions with feces and raw sewage everywhere for "six full days"); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases establishing that holding inmates in a feces and blood covered cell without a working sink or toilet for anywhere from thirty-six hours to six days was inhumane). However, both duration and mitigation play a part in the Eighth Amendment analysis. *See, e.g., Taylor*, 592 U.S. at 7–10 *(*case remanded to determine whether conditions were "compelled by necessity or exigency" and whether they could have been "mitigated, either in degree or duration"); *Johnson*, 29 F.4th at 904

8

("frequency, severity, [and] duration of the unsanitary cell conditions" must be considered); *Dixon v. Godinez*, 114 F.3d 640, 643 (7th Cir. 1997) ("[T]he duration of the condition . . . determines whether the conditions of confinement are unconstitutional."); *Stephens v. Cottey*, 145 Fed. Appx. 179, 181 (7th Cir. 2005) ("As is the case under the Due Process Clause, a short-term deprivation is less serious for Eighth Amendment purposes than a long-term one.") (collecting cases)).

In a recent case analogous to Mr. Lminggio's situation, an inmate was housed in a medical segregation cell at the East Moline Correctional Center for 31 days following an altercation with another inmate. *Gills v. Hamilton*, 164 F.4th 640, 643 (7th Cir. 2026). The cell was unsanitary and lacked a sink, toilet, and running water. *Id.* The court acknowledged that "forcing a prisoner to live in egregiously unsanitary conditions satisfies the objective prong of the deliberate indifference test." *Id.* at 646 (citing *Taylor*, 592 U.S. at 7–10). Mr. Gills' living conditions were described as follows:

> [H]e was intermittently denied the use of a toilet or sink—on multiple occasions for approximately eight hours—and at times had to improvise in his cell. There's evidence that Gills's cell was cleaned after these incidents, but the record shows that he was forced to live alongside his waste for long stretches and had no way of cleaning himself.

*Id.* at 646. The court "assume[d] without deciding" that the conditions violated the objective prong of the Eighth Amendment analysis but noted it was "debatable given the intermittent nature of [the inmate's] experience." *Id.* In any event, the court concluded that although some guards were aware of the conditions, there was no Eighth Amendment violation because officers took steps to "mitigate the situation." *Id.* Of note, while he was forced to urinate and defecate on the floor several times, his cell was cleaned

9

on occasion, and he was never "barred from using the facilities for longer than a single [eight hour] guard shift at a time." *Id*. This comports with the Supreme Court's acknowledgement that even when conditions may be "deplorably unsanitary," duration and mitigation attempts are relevant to determining whether an Eighth Amendment violation exists. *Taylor*, 592 U.S. at 8–9.

Similarly, even if the conditions Mr. Lminggio was subjected to could be construed as objectively serious—which is debatable given the short-term, temporary nature of the placement—he admits he was moved to a new cell after only eight-and-a-half hours. It's undisputed that he didn't spend a full night in the holding cell. *Gills* found the conditions were sufficiently mitigated by occasional cleaning of the human waste and the fact that he wasn't deprived of the use of a bathroom for more than eight hours at a time. Here, even greater steps to mitigate were taken, as Mr. Lminggio was removed from the unsanitary situation completely after approximately eight hours.[5] Based on these allegations, Mr. Lminggio hasn't stated a viable Eighth Amendment claim. *See Edwards*,

---

[5] Although he was given an opportunity to amend to clarify his claims, Mr. Lminggio's description of the cell he was removed to is exceedingly sparse. He alleges only that the officers— he doesn't say who—took his property leaving him with no utensils or a cup. He claims the cell was "frozen cold" and that the lights stayed on "all night until the following evening." ECF 15 at 2. He doesn't say he was deprived of bedding or clothes, nor does he provide additional details about duration or temperature. Either way, these scant allegations aren't sufficient to state a claim. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 403 (7th Cir. 2010) ("[A] plaintiff must do better than putting a few words on paper that, in the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law."). This is especially true considering he was placed into the cell at approximately 2:45 am, so the light disruption was undeniably short-term and minimally disruptive. *See Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008) ("24–hour lighting involving a single, 9–watt fluorescent bulb does not objectively constitute an extreme deprivation.") (quotations and citation omitted).

10

478 F.3d at 830 and *McCready,* 453 F.3d at 888 (plaintiff can plead himself out of court if he pleads facts that preclude relief).

Regarding Mr. Lminggio's specific claim that he was forced to defecate on a Styrofoam tray—which appears to have been the main focus of his lawsuit since its inception—a cell without a toilet or sink, on its own, doesn't violate the constitution. *See Gills*, 164 F.4th at 645–46 (collecting cases). In general, though "long-term deprivations of modern toilet facilities" can potentially violate the Eighth Amendment, "temporary imposition[s]"do not. *White v. Knight*, 710 F. Appx. 260, 261–62 (7th Cir. 2018). As stated in the court's prior screening order, the fact that Mr. Lminggio had to defecate on a tray after approximately three hours of being in the holding cage is unfortunate. The court doesn't "mean to minimize the discomfort, pain, or embarrassment that even slight limits on toilet access can cause." *Id*. at 262. But a one-time, short-term deprivation isn't the type that rises to the level of a constitutional violation. He admits he was moved out of the holding cell or shower cage within eight-and-a-half hours, and he doesn't allege his new cell lacked a toilet or that he was otherwise prevented from using bathroom facilities. As such, Mr. Lminggio's allegations aren't sufficient to suggest Sgt. McKibbon or any of the other defendants violated the Eighth Amendment. *See id.* at 261–62 (affirming dismissal of complaint where prison policy limited access to toilets during lockdowns, which caused plaintiff to defecate once on his cell floor and another time in a bag after a guard refused to let him use a toilet and told him to "[defecate] on himself"); *see also Cunningham v. Eyman*, 17 Fed. Appx. 449, 454 (7th Cir. 2001) (inmate who urinated and defecated on himself after being denied bathroom access was forced to spend "four to five hours in

11

soiled clothing" but court found "[t]hough certainly unpleasant, these hardships were temporary and as this court's case law makes clear, they were not of sufficient severity to implicate the Eighth Amendment").

For these reasons, this case is DISMISSED pursuant to 28 U.S.C. § 1915A because the second amended complaint doesn't state any claims for which relief can be granted.

SO ORDERED.

March 9, 2026

s/ Damon R. Leichty
Judge, United States District Court